### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF OKLAHOMA

LYNN LAMB,                          )
                                   )
              Plaintiff,           )
                                   )
                                   )  Case No. CIV-18-293-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
              Defendant.           )

### REPORT AND RECOMMENDATION

Plaintiff Lynn Lamb (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 54 years old at the time of the ALJ's decision. Claimant completed her GED. She has worked in the past as a convenience store clerk, restaurant assistant manager, and grocery checker. She alleges an inability to work beginning January 10, 2016, due to limitations resulting from chronic pancreatitis, partial pancreatotomy, splenectomy, diverticulitis, diarrhea, pain, nausea, depression, anxiety, arthritis, and back pain.

## Procedural History

On March 23, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for

3

supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 7, 2017, Administrative Law Judge("ALJ") Edward L. Thompson conducted an administrative hearing by video, presiding from Oklahoma City, Oklahoma. Claimant appeared from Ardmore, Oklahoma. On July 20, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 6, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Errors Alleged for Review

All of Claimant's alleged errors center on the ALJ's step four determination regarding Claimant's RFC and whether Claimant can perform her past relevant work. Claimant asserts the ALJ committed error by (1) failing to include limitations in the RFC related to her severe gastrointestinal impairment; (2) failing to properly address in the RFC opinions from consulting psychologist

4

Micheline Chrisman, Ph.D., including the global assessment of functioning ("GAF") score assigned to Claimant; (3) failing to properly weigh the opinion evidence from the consultative examiner and the non-examining state agency physicians, resulting in an improper RFC; and (4) finding Claimant could perform her past relevant work at step four.

### RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments of the gastrointestinal system, depression, and anxiety. (Tr. 15). He determined Claimant could perform a full range of light work, with additional mental limitations. Claimant could perform simple and some complex tasks, with simple tasks defined as "unskilled entry level work with an SVP of one (which can be learned by a simple demonstration) and SVP of two (which can be learning in thirty days or less)." Claimant could also perform some complex tasks, meaning "semi-skilled tasks with an SVP of three[.]" Claimant could not perform tasks with an SVP of four through nine. She could have superficial interaction with the general public, with superficial meaning "brief, succinct, cursory, concise communication relevant to the task being performed[.]" Claimant could "have unlimited interaction with supervisors and co-workers, i.e., the [C]laimant is able to interact appropriately with supervisors and co-workers; and the [C]laimant has no adaptive limitations[.]" (Tr. 17-18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could return to her past relevant work as a convenience store cashier and grocery checker. (Tr. 22-23). As a result, the ALJ concluded Claimant was not under a disability from January 10, 2016, her alleged onset date, through the date of the decision. (Tr. 23).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id.* The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant first argues that although the ALJ determined her gastrointestinal impairment was severe, he failed to include limitations in the RFC associated with the impairment. However, the ALJ addressed Claimant's gastrointestinal impairment in the RFC. He noted that Claimant "stated she cannot work due to abdominal pain radiating to her back, nausea, diarrhea, incontinence, and vomiting, yet also stated she gained thirty pounds and she repeatedly reports to her clinicians that she is not incontinent." (Tr. 18). He discussed evidence that prior to her onset date, Claimant underwent an open cholecystectomy in December of 2013 and an extended right colon resection and massive adhesiolysis in October of 2014. She was assessed with diarrhea, black tarry stools, abdominal pain, and chronic pain. (Tr. 18-19).

The ALJ also discussed that Claimant obtained pain management and that in October of 2015, she reported to her doctor her pain was "intermittent and mild," and she had "2-3 episodes of diarrhea daily." Claimant told her physician in October of 2016 that she got out of her house one time per week and planned her trips "so she does not become stressed about her gastrointestinal problems, noting she does not eat anything on mornings she leaves the house." (Tr. 21). In January of 2017, when Claimant sought treatment for elevated blood pressure, she denied "any abdominal pain, blood in her stool, constipation, diarrhea, or vomiting, but reported nausea[.]" (Tr. 19).

The ALJ stated that:

> [C]oncerning urination, defecation, and diarrhea, the
> [C]laimant can use the toilet before the eight-hour work
> day begins; the [C]laimant can use the toilet after
> working two hours, during the 15 minute mid-morning
> break; the [C]laimant can use the toilet during the lunch
> break; the [C]laimant can use the toilet during the 15
> minute mid-afternoon break; and the [C]laimant can use
> the toilet after the eight-hour work day ends.    The
> [C]laimant is not incontinent of urine or feces.
> Examinations at times show tenderness in the epigastric
> region but otherwise essentially normal findings. (see,
> e.g., Exhibits 3F/7; 10F; 11F).    In August 2016, the
> [C]laimant acknowledged that Lomotil helps with her
> nausea (Exhibit 11F/4).  Her doctor recommended she wear
> pads or Depends when she leaves home (Exhibit 13F/15).
> Thus, although the [C]laimant has some physical work-
> related limitations due to her gastrointestinal
> disorders, the medical evidence of record indicates she
> can work above the substantial gainful activity level.

(Tr. 19).

In support of the physical portion of the RFC, the ALJ
assigned "great weight" to the opinions of the state agency
physicians, Dr. Ronald Painton, M.D., and Dr. David Coffman, M.D.
Dr. Painton reviewed the record, which included consideration that
Claimant suffered from a severe impairment for "other disorders of
gastrointestinal system" and evidence that Claimant suffered from
gastrointestinal issues, including diarrhea.   On May 31, 2016,
taking into account her impairment and the evidence, Dr. Painton
determined Claimant could perform a full range of light work.  (Tr.
72, 74-76).   Dr. Coffman completed his review of the record on
November 9, 2016.   He also accounted for Claimant's severe
impairment of "other disorders of gastrointestinal system" and

8

evidence that Claimant suffered from gastrointestinal issues, including diarrhea. He also determined Claimant could perform a full range of light work. (Tr. 104-05, 108-10).

In the decision, the ALJ determined Claimant's gastrointestinal issues were severe, referenced Claimant's complaints, and discussed the medical evidence. Claimant's physicians did not include any specific limitations regarding Claimant's gastrointestinal issues. The ALJ relied upon the state agency physicians' RFC assessments, wherein they took into account Claimant's gastrointestinal issues as a severe impairment, noting that both physicians "independently examined the evidence and . . . agree[d] the [C]laimant can perform the full range of light exertion work." The ALJ determined the opinions were entitled to "great weight" because they "comport with the objective evidence discussed [in the decision] and with the [C]laimant's complaints that are consistent with the medical evidence." (Tr. 21). The Court finds there is no error with the RFC in this regard.

Claimant next argues the ALJ failed to account in the RFC for the GAF score assigned by Dr. Chrisman, the consulting psychologist. Dr. Chrisman examined Claimant on July 6, 2016, and she assigned Claimant a GAF score of 58. (Tr. 561-62).

"The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122

n.3 (10th Cir. 2004).  The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF score alone is insufficient to reverse an ALJ's determination of non-disability.  *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003); *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004); *Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. 2004).  Specifically, the DSM-IV-TR explains that a GAF score of 51-60 indicates "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). "[S]tanding alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work."  *Lopez*, 78 Fed. Appx. at 678.  "'While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.'"  *Id*., quoting *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2002).

The ALJ specifically discussed the GAF score assigned to Claimant by Dr. Chrisman in the decision. (Tr. 22). Dr. Chrisman did not indicate Claimant could not work.  This Court finds the ALJ was under no legal obligation to discuss Claimant's GAF score further or give it more weight than he expressly gave it in the decision.

Claimant next argues the ALJ failed to properly consider a physical finding by Dr. Chrisman during her mental examination of

10

Claimant on July 6, 2016.  Specifically, Claimant contends Dr. Chrisman observed that Claimant had "difficulty getting in and out of her chair and her gait was slow and labored." (Tr. 561). However, there is no error by the ALJ in not specifically discussing Dr. Chrisman's physical observation in the RFC.  Dr. Chrisman was a psychologist charged with conducting a psychological evaluation of Claimant.  Her statement lacks any explanation of the degree of physical limitation associated with her observation, and it is therefore not significantly probative requiring the ALJ to address it. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ is not required to discuss every piece of evidence in the record).

Claimant further argues that the ALJ erred by affording "great weight" to the opinions of the state agency psychologists over the opinions of Dr. Chrisman.  When determining Claimant's RFC, the ALJ discussed in detail Dr. Chrisman's examination findings in the decision.  (Tr. 20, 22).  However, Dr. Chrisman did not complete a medical source statement, nor did she include any limitations on Claimant's functioning.  Moreover, Claimant does not point out how Dr. Chrisman's examination findings and GAF score are inconsistent with the findings of the state agency psychologists. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When an ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is

11

weakened."). Thus, the Court finds there was no error in the weight given by the ALJ to the opinions of the state agency psychologists.

### Step-Four Determination – Past Relevant Work

Claimant argues the ALJ erred when he made a step-four determination that she could return to her past relevant work as a convenience store cashier and a grocery checker. She contends that although the ALJ assigned "great weight" to the state agency psychologists' opinions, he did not accurately incorporate all their limitations in the RFC. She also argues that conflicts exist between the VE's testimony and the job descriptions in the Dictionary of Occupational Titles ("DOT") (4th ed., 1991) for the convenience store cashier and grocery checker jobs, and the ALJ did not reconcile the conflicts in his decision. Specifically, Claimant asserts the ALJ's determination that she can have "superficial" contact with the public is not only inconsistent with the limitations imposed by the state agency psychologists, but it is also precluded by the descriptions for the jobs in the DOT. She further contends that her past relevant work is precluded based upon the required reasoning levels listed in the DOT for the positions.

Both state agency psychologists determined Claimant could "do simple and some complex tasks[,]" but she was "not able to do very detailed and complex instructions due to difficulty with delayed

recall." They concluded Claimant would "behave appropriately but not deal very well with the general public." (Tr. 78, 112). It is noted in the "Findings of Fact and Analysis of Evidence" that because Claimant cannot deal very well with the general public, she could not perform her past relevant work. (Tr. 71-72, 104-05).

Consistent with the RFC stated in the decision, the ALJ conveyed through hypothetical questions the following mental limitations to the VE at the hearing: "the claimant can perform 'simple' and 'some complex' tasks; 'simple' tasks means unskilled entry level work with an SVP of one (which can be learned by a simple demonstration) and SVP of two (which can be learned in thirty days or less); the claimant also can perform 'some complex' tasks; 'some complex' tasks means semi-skilled tasks with an SVP of three; the claimant cannot perform tasks with an SVP of four through nine; the claimant can have 'superficial' interaction with the general public; 'superficial' means brief, succinct, cursory, concise communication relevant to the task being performed; the claimant can have unlimited interaction with supervisors and co-workers, i.e., the claimant is able to interact appropriately with supervisors and co-workers; and the claimant has no adaptive limitations[.]" (Tr. 17-18, 53-54). Based upon the ALJ's a hypothetical question, the VE testified Claimant could perform her past relevant work as a convenience store cashier and a general

checker as she actually performed the positions or as they are generally performed. (Tr. 54-59). The VE indicated that her testimony did not differ from the DOT or the Selected Characteristics of Occupations. (Tr. 60).

The ALJ recounted the state agency psychologists' limitations, noting that for the mental portion of the RFC, he assigned "great weight" to their opinions. (Tr. 21). However, the limitations included in the hypothetical question posed to the VE appear different from those given "great weight" by the ALJ in the decision. The ALJ makes no mention in the decision of the state agency opinions that Claimant could not perform her past relevant work because of her limitation with the general public.

Moreover, there is a conflict between the VE's testimony and the DOT job descriptions for the positions of convenience store cashier (DOT # 211.462-010 (Cashier II), 1991 WL 671840), and grocery checker (DOT # 211.462-014 (Cashier-Checker), 1991 WL 671841). Both jobs require "significant" contact with people. *Id*. Although the ALJ limited Claimant to "superficial" contact with the general public, the full job descriptions for the positions strongly suggest that several aspects of the positions involve significant contact with people. *Id.; see also Krueger v. Astrue*, 337 Fed. Appx. 758, 761 (10th Cir. 2009) (noting full DOT job description of cashier position clearly indicated extensive contact with people was an important aspect of the job).

14

The ALJ asked the VE if there were any conflicts between her testimony and the DOT, and the VE answered there were not. However, on remand, the ALJ must provide a reasonable explanation in his decision for the conflict between the DOT and the VE's testimony regarding the requirement for "significant" contact with people in the DOT job descriptions for the convenience store cashier and grocery checker positions. *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified."); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005).  Further, the ALJ should confirm with the VE that a claimant who can perform "simple and some complex tasks" but "not . . . very detailed and complex instructions" can perform jobs with a reasoning level of three.  *See* DOT # 211.462-010 and DOT # 211.462-014 ("Reasoning:  Level 3 – Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.").

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

16